**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

---

| | |
|---|---|
| OOO BRUNSWICK RAIL MANAGEMENT, and BRUNSWICK RAIL GROUP LIMITED<br><br>  Plaintiffs,<br><br> v.<br><br>PAUL OSTLING,<br>  Defendant. | Case No. 3:17-cv-00114 (AVC)<br><br><br><br>April 13, 2017 |

---

# DEFENDANT PAUL OSTLING'S MOTION TO QUASH SUBPOENA SERVED ON RACKSPACE HOSTING, INC.

**ORAL ARGUMENT NOT REQUESTED**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ............................................................................................................................ 2

    I.    PLAINTIFFS ALLEGE THAT MR. OSTLING MISAPPROPRIATED CONFIDENTIAL INFORMATION IN NOVEMBER AND DECEMBER 2016 ............................................................................................................. 2

    II.    PLAINTIFFS' IMPROPER SUBPOENA TO THIRD PARTY RACKSPACE ........................................................................................................ 3

    III.    RACKSPACE'S OBJECTIONS TO THE SUBPOENA AND ONGOING COMMUNICATIONS WITH THE PARTIES REGARDING THE SUBPOENA ........................................................................................................... 4

ARGUMENT .................................................................................................................................. 6

    I.    THE SUBPOENA SHOULD BE QUASHED BECAUSE RACKSPACE CANNOT PRODUCE THE DOCUMENTS REQUESTED BY PLAINTIFFS AND IS PROHIBITED FROM PRODUCING MR. OSTLING'S MAILBOX. ............................................................................................ 6

        A.    Rackspace Cannot Produce The Requested "Complete Non-Content Header Information." ..................................................................... 6

        B.    The Stored Communications Act Prohibits Rackspace From Producing Mr. Ostling's Emails Without His Consent, And Mr. Ostling Does Not Consent To The Production ........................................... 6

        C.    The Subpoena Should Be Quashed Because The Information Is Equally And More Available From The Parties To The Litigation ............ 8

    II.    THE SUBPOENA SHOULD BE QUASHED BECAUSE THE INFORMATION RACKSPACE CAN PRODUCE IS NOT RELEVANT AND CONTAINS PRIVILEGED AND PRIVATE MATERIAL. ........................ 9

    III.    MR. OSTLING PRODUCED REDACTED EMAIL LOGS TO PLAINTIFFS, AND IF NECESSARY, CAN PRODUCE UNREDACTED LOGS TO THIS COURT FOR IN CAMERA REVIEW ......... 11

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bernstein v. Mafcote, Inc.*,
　Civ. No. 3:12CV311 (WWE), 2014 U.S. Dist. LEXIS 98499 (D. Conn. July
　21, 2014) ..................................................................................................................................9

*Chamberlain v. Farmington Sav. Bank*,
　No. 3:06CV01437 (CD), 2007 U.S. Dist. LEXIS 70376 (D. Conn. Sept. 25,
　2007) ........................................................................................................................................9

*Crosby v. City of N.Y.*,
　269 F.R.D. 267 (S.D.N.Y. 2010) ..............................................................................................9

*Fago v. City of Hartford*,
　Civ. No. 3:02CV1189 (AHN), 2003 U.S. Dist. LEXIS 25723 (D. Conn. Dec.
　31, 2003) ..................................................................................................................................9

*Jacobs v. Connecticut Cmty. Tech. Colleges*,
　258 F.R.D. 192 (D. Conn. 2009)...............................................................................................8

*In re Subpoena Duces Tecum to AOL, LLC*,
　550 F. Supp. 2d 606 (E.D. Va. 2008) ...................................................................................7, 8

*Theofel v. Farey-Jones*,
　359 F.3d 1066 (9th Cir. 2004) ..................................................................................................7

*Travelers Indem. Co. v. Metro. Life Ins. Co.*,
　228 F.R.D. 111 (D. Conn. 2005)...............................................................................................8

*Matter of Warrant to Search a Certain E–Mail Account Controlled & Maintained
　by Microsoft Corp.*,
　829 F.3d 197 (2d Cir. 2016).....................................................................................................7

**Statutes**

18 U.S.C. §§ 2701(a), 2702(a)........................................................................................................7

18 U.S.C. § 2702(b) .......................................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)..................................................................................................................9

Fed. R. Civ. P. 45(d)(3)(A)(iii) ................................................................................................8, 11

Fed. R. Civ. P. 45(d)(3)(A)(iv) ................................................................................................6

Defendant Paul Ostling, by and through his attorneys, moves this Court to quash the third party subpoena served by Plaintiffs OOO Brunswick Rail Management and Brunswick Rail Group Limited on Rackspace Hosting, Inc. on or around March 3, 2017.  For the reasons stated herein, the subpoena should be quashed.

## PRELIMINARY STATEMENT

Plaintiffs OOO Brunswick Rail Management and Brunswick Rail Group Limited allege that Defendant Paul Ostling disclosed their purported confidential information in November and December 2016, so they served a third party subpoena on the company that has hosted his personal and professional emails, Rackspace Hosting, Inc. ("Rackspace"), seeking information about every email in the Rackspace email account that Mr. Ostling established in 2009. Plaintiffs literally sought eight years' worth of email information for a case alleging two months of misappropriation.  Throughout that time period, Mr. Ostling has sent and received voluminous amounts of email that have absolutely nothing to do with Plaintiffs, including personal emails to family and friends and emails relating to the various other business ventures and nonprofit work Mr. Ostling has been involved in.

Specifically, Plaintiffs requested "complete non-content email header information." Rackspace objected to the Subpoena on various grounds, including that Rackspace did not have the ability to produce "complete non-content email header information" and that Rackspace was prohibited by the Stored Wire and Electronic Communications Act, 18 U.S.C. § 2701 *et seq.* ("Stored Communications Act") from producing Mr. Ostling's emails without his consent.

The only information about Mr. Ostling's email account that Rackspace can produce are two voluminous spreadsheets showing "To" and "From" traffic through the email account.  But the logs only cover a 14 day window: the date the logs are exported and the preceding 13 days.

1

The set of logs that Rackspace exported covers February 18, 2017 through March 3, an irrelevant time period that post-dates Plaintiffs' complaint against Mr. Ostling.

Notwithstanding their utter lack of relevance to Plaintiffs' allegations, the logs contain highly personal information (*e.g.*, email addresses of family, friends, religious group contacts, and colleagues), and information about emails to or from people located in Russia that are protected from disclosure by Russia's strict privacy laws. Further, the logs contain privileged email communications.

Despite Rackspace's and Mr. Ostling's objections, Plaintiffs have continued to pursue their subpoena for irrelevant, private, and privileged information. Plaintiffs are abusing their subpoena power by initially seeking and continuing to pressure a third party for information that is of no use to Plaintiffs' claims in this action. Mr. Ostling respectfully requests that this Court quash the subpoena.

## BACKGROUND

### I. PLAINTIFFS ALLEGE THAT MR. OSTLING MISAPPROPRIATED CONFIDENTIAL INFORMATION IN NOVEMBER AND DECEMBER 2016

In this lawsuit against Mr. Ostling, Plaintiffs allege he "received and sent Brunswick's confidential, trade secret and inside documents and information using his personal email account at paul.ostling@pauljostling.com that is hosted by and through Rackspace." Dkt. 78 (FAC) ¶ 5. Plaintiffs allege this misappropriation took place in November and December 2016. *Id.* ¶ 37; *see also id.* ¶ 52 (describing the extent of Mr. Ostling's alleged misappropriation, which was in December).

Plaintiffs filed a complaint and *ex parte* application against Mr. Ostling and Richard Sultanov in the United States District Court, Northern District of California (the "California Court") on January 4, 2017. On January 20, following briefing by both sides and a hearing, the

California Court concluded that it lacked personal jurisdiction over Defendants and denied the preliminary injunction and expedited discovery requested by Plaintiffs. Dkt. 36-52 (California Court Order Denying Preliminary Injunction).

Plaintiffs then filed this lawsuit against Mr. Ostling on January 25, again requesting a TRO. Dkt. 1 (Complaint); Dkt. 4 (Ex Parte App.). On February 3, this Court issued an order prohibiting Mr. Ostling from disclosing Plaintiffs' confidential information, Dkt. 53 (TRO) at 3, and requiring certain information and materials to be submitted *in camera*. Mr. Ostling complied, Dkt. 57 (Notice of Compliance) & 60 (Corrected Notice), and this Court subsequently granted in part and denied in part Plaintiffs' *ex parte* application in light of the February 3 order. Thus, any potentially relevant time period with respect to discovery ends, at the latest, on January 4.

## II.     PLAINTIFFS' IMPROPER SUBPOENA TO THIRD PARTY RACKSPACE

Rackspace is the provider of Mr. Ostling's email account, which he established in approximately 2009. Dkt. 36-50 (Ostling Decl.) ¶ 12. Since that time, Mr. Ostling has used his Rackspace email account for all of his personal email and email relating to a variety of business matters, including Mr. Ostling's work on the boards of the National Central Depository of the MOEX Group, Innolume GmbH, Domodedovo - East Line, Kungur Oilfield Equipment Services, Uralchem and Promsvyazbank, as chairman of the audit committee for the board of Datalogix, as president of Boy Scouts of America's Transatlantic Council, as chairman of the Business Council for International Understanding, as a member of the World Board of Governors of the USO, and in his newest venture called PSINOS. Dkt. 36-50 (Ostling Decl.) ¶¶ 5-6, 12, 47.

On March 3, Plaintiffs served the subpoena on Rackspace, which requests that Rackspace 1) produce the "[c]omplete non-content email header information for emails within the account paul.ostling@pauljostling.com, including all email addresses and other routing information" and 2) "[p]reserve all Documents responsive to the foregoing requests [sic]." Declaration of Kimberly I. Culp ("Culp Decl.") ¶ 2, Culp Decl. Ex. A (Subpoena to Rackspace).

### III. RACKSPACE'S OBJECTIONS TO THE SUBPOENA AND ONGOING COMMUNICATIONS WITH THE PARTIES REGARDING THE SUBPOENA

Rackspace objected to the subpoena and has not yet produced documents to Plaintiffs. Culp Decl. ¶ 3, Culp Decl. Ex. B (Rackspace March 15 Letter). Rackspace explained that it was unable to produce the type of information about the emails that Plaintiffs requested, and Plaintiffs' request was vague, overbroad, and unduly burdensome. Rackspace also objected to producing the contents of Mr. Ostling's email communications. The Stored Communications Act prohibits Rackspace from disclosing Mr. Ostling's emails without his consent and Mr. Ostling did not consent to having his emails produced. *Id.* Additionally, the emails in Mr. Ostling's Rackspace email account belong to Mr. Ostling rather than Rackspace, so they are not within Rackspace's possession, custody, or control and Plaintiffs were seeking data from a non-party that was equally or more available from a party. Rackspace confirmed that it is preserving Mr. Ostling's email account in accordance with the January 6 TRO by the California Court.

Following Rackspace's objections to the subpoena, the parties met and conferred between themselves and had multiple communications with Rackspace. Culp Decl. ¶¶ 4-6. Rackspace further explained its position that it could not produce the information requested by Plaintiffs and it stood by its objections. Culp Decl. ¶ 5, Culp Decl. Ex. C (Rackspace March 24 Letter). Specifically, in order for Rackspace to provide the particular information about each email that Plaintiffs sought, it would have to open the emails in Mr. Ostling's account one by one, identify

4

and extract the data that Plaintiffs wanted, and copy that data onto a new document. *Id.* It is not feasible for Rackspace to perform this task for the eight years' worth of emails in Mr. Ostling's account. *Id.*

Rackspace described the information that it does maintain as part of its business records: logs that show the following information about each email that was sent from or received in Mr. Ostling's email account, over a 14 day time period: the email addresses of the sender and recipient, timestamp, a nonsensical (at least to a lay person) message ID, and other technical information about the email. Rackspace created logs covering emails from February 18 through March 3, which are contained in two spreadsheets. Culp Decl. ¶ 5, Culp Decl. Ex. C. These logs contain records of nearly 6,000 emails sent to or from Mr. Ostling in just that 14 day time frame. Culp Decl. ¶ 6.

Plaintiffs asked Rackspace to produce the logs to them. Culp Decl. ¶ 7. Rackspace produced them to Mr. Ostling and informed the parties that it intended to also produce the logs to Plaintiffs. *Id.* ¶ 8. Mr. Ostling objected to the production to Plaintiffs because the logs do not contain information relevant to Plaintiffs' allegations, and instead, contain private information and information protected by the attorney-client privilege. *Id.* ¶ 9. Mr. Ostling also requested that Rackspace hold off on producing the logs to Plaintiffs so he could produce redacted versions of the logs, meet and confer with Plaintiffs if necessary, and hopefully resolve this subpoena dispute without requiring further involvement from Rackspace. *Id.* ¶ 10. On April 6, Mr. Ostling produced the redacted logs to Plaintiffs along with an explanation (outlined in more detail in this motion) as to why any further production is unwarranted. Culp Decl. ¶11, Culp Decl. Ex. D (Cover Letter and Redacted Logs). As it is apparent that Plaintiffs may seek the unredacted logs from Rackspace or may seek to enforce the subpoena as issued, Mr. Ostling

brings this Motion to prevent the production of privileged, private, and irrelevant information.

## ARGUMENT

### I. THE SUBPOENA SHOULD BE QUASHED BECAUSE RACKSPACE CANNOT PRODUCE THE DOCUMENTS REQUESTED BY PLAINTIFFS AND IS PROHIBITED FROM PRODUCING MR. OSTLING'S MAILBOX.

#### A. Rackspace Cannot Produce The Requested "Complete Non-Content Header Information."

Rackspace says it simply cannot produce the documents that Plaintiffs requested in the subpoena. Plaintiffs sought "complete non-content header information" for all emails within Mr. Ostling's email account. Yet, as Rackspace noted in its objections, that term is not clearly defined and Rackspace does not have the capability to provide such documents. Culp Decl. ¶3, Culp Decl. Ex. B (Rackspace March 15 Letter). Rackspace explained that it "lacks the ability to separate e-mails into any of the various component parts . . . [and] can only produce the entire mailbox." *Id.* Rackspace further explained that to comply literally with the subpoena, Rackspace would have to "extract that information [by] opening each message, identifying the header data, copying that information out into a new document, then going on to the next message in the mailbox to repeat the process." Culp Decl. ¶ 5, Culp Decl. Ex. C (Rackspace March 24 Letter). Rackspace confirmed that it could not as a practical matter manually perform this procedure for thousands of emails going back to 2009 (the subpoena is not limited in time in any way). *See* Fed. R. Civ. P. 45(d)(3)(A)(iv) (court "must quash or modify a subpoena that . . . subjects a person to undue burden).

#### B. The Stored Communications Act Prohibits Rackspace From Producing Mr. Ostling's Emails Without His Consent, And Mr. Ostling Does Not Consent To The Production.

If Plaintiffs contend that Rackspace should produce Mr. Ostling's email account (*i.e.*, the contents of all of Mr. Ostling's actual emails) because it cannot produce the information

6

requested in the subpoena, Rackspace is unable to do so.  The Stored Communications Act "protects the privacy of the contents of files stored by service providers and of records held about the subscriber by service providers . . . ."  *Matter of Warrant to Search a Certain E–Mail Account Controlled & Maintained by Microsoft Corp.*, 829 F.3d 197, 205 (2d Cir. 2016).  It prohibits unauthorized third parties from obtaining electronic communications and it prohibits service providers from divulging the contents of any electronic communications.  *Id.*; 18 U.S.C. §§ 2701(a), 2702(a).  While there are certain listed exceptions, a civil discovery subpoena is not one of those exceptions.  18 U.S.C. § 2702(b); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1071, 1074-75 (9th Cir. 2004) (subpoena to plaintiffs' internet service provider ordering the production of all of plaintiffs' emails violated the Stored Communications Act); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 607 (E.D. Va. 2008) (affirming magistrate's order to quash subpoena to America Online "because a civil discovery subpoena is not a disclosure exception under the Act").

      Mr. Ostling, as Rackspace noted to Plaintiffs, does not consent to the production of his emails.  Culp Decl. ¶3, Culp Decl. Ex. B (Rackspace March 15 Letter).  Rackspace further understands and has explained to Plaintiffs that the Stored Communications Act prevents it from producing Mr. Ostling's emails and that doing so would expose Rackspace to liability.  *Id.*

      The production of Mr. Ostling's entire mailbox would be objectionable for a host of other reasons, including that exposing all of Mr. Ostling's private communications is a gross invasion of privacy.  The mailbox contains many emails that are entirely irrelevant (*e.g.*, emails with family, friends, and colleagues in other business ventures, emails relating to work with several nonprofits, emails relating to religious observance, and junk email) and its production would be overly broad.  It also contains many emails subject to the attorney-client privilege or marital

privilege. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii) (court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter"); *Jacobs v. Connecticut Cmty. Tech. Colleges*, 258 F.R.D. 192, 195 (D. Conn. 2009) (party claiming a personal right or privilege with respect to the documents sought has standing to move to quash a third party subpoena); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d at 612-13 (quashing subpoena requesting all emails within a six week period on the additional ground that it was overbroad and therefore imposed an undue burden, as the emails likely contained privileged and personal emails and emails that did not relate to the litigation).

### C. The Subpoena Should Be Quashed Because The Information Is Equally And More Available From The Parties To The Litigation

Rackspace has explained to Plaintiffs that it does not own the emails within Mr. Ostling's email account, so those emails are not within Rackspace's possession, custody, or control, and requests for such emails should be directed to Mr. Ostling. Culp Decl. ¶ 3, Culp Decl. Ex. B. In fact, Plaintiffs have already served requests for production on Mr. Ostling which seek, among other things, his communications since October 1, 2016 regarding Plaintiffs or their purported confidential information or with people whom Plaintiffs believe received purportedly confidential information. Culp Decl. ¶ 12.

Rackspace should not be burdened with producing documents that are available from Mr. Ostling and have already been requested from Mr. Ostling. *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 114 (D. Conn. 2005) (quashing subpoena when records could be obtained from the public record or directly from a party instead of putting an undue burden on a non-party).

/ /

## II. THE SUBPOENA SHOULD BE QUASHED BECAUSE THE INFORMATION RACKSPACE CAN PRODUCE IS NOT RELEVANT AND CONTAINS PRIVILEGED AND PRIVATE MATERIAL.

To the extent Plaintiffs seek the production of the unredacted email logs that Rackspace produced to Mr. Ostling, the subpoena should be quashed to prevent such production. The logs contain privileged and otherwise highly personal information and only cover emails that post-date any potentially relevant time period.

The logs do not contain any information that is "relevant to any party's claim or defense and proportional to the needs of the case," and this alone provides grounds to quash the subpoena. Fed. R. Civ. P. 26(b)(1); *see, e.g., Crosby v. City of N.Y.*, 269 F.R.D. 267, 282 (S.D.N.Y. 2010) ("Where a party has subpoenaed a non-party, the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.") (citation and internal quotations omitted); *Bernstein v. Mafcote, Inc.,* Civ. No. 3:12CV311 (WWE), 2014 U.S. Dist. LEXIS 98499, at *13-16 (D. Conn. July 21, 2014) (granting motion to quash on grounds that requesting party speculated that information sought was relevant and where such information could be obtained from less intrusive means); *Fago v. City of Hartford,* Civ. No. 3:02CV1189 (AHN), 2003 U.S. Dist. LEXIS 25723 (D. Conn. Dec. 31, 2003) (granting motion to quash where subpoena sought information of no relevance to litigation); *Chamberlain v. Farmington Sav. Bank*, No. 3:06CV01437 (CD), 2007 U.S. Dist. LEXIS 70376 (D. Conn. Sept. 25, 2007) (same).

Plaintiffs allege that Mr. Ostling used his Rackspace email to disclose purported trade secrets and confidential information during November and December 2016. Dkt. 78 (FAC) ¶¶ 5, 37, 52. Yet the logs only cover emails from February 18 through March 3 – well after the alleged disclosures giving rise to Plaintiffs' claims. Any information about emails in that time

9

period is irrelevant to this dispute.

In addition, the logs should not be produced to Plaintiffs because they contain highly personal information. The logs disclose the email addresses of Mr. Ostling's family, friends, religious group contacts, and business and nonprofit colleagues unrelated to Plaintiffs. Besides revealing this personal identifying information of third parties who have nothing to do with this lawsuit, showing who Mr. Ostling communicates with via email in itself reveals information about Mr. Ostling's personal life. This is private information that Plaintiffs have no right or need to see.

Given that Mr. Ostling maintains a residence in Russia and has Russian friends and colleagues, some of his emails are to or from people located in Russia and protected by Russian privacy law. Russia protects individuals' rights of privacy in their communications and their personal data, such as the contact information and history of contact information. *See* Dkt. 34 (Declaration of Dmitry Chernyy) ¶¶ 25-47.

The Russian Constitution provides the right to privacy with respect to "correspondence, of telephone conversations, postal, telegraph, and other messages. Limitations of this right shall be allowed only by court decision." *Id.* ¶ 27. In addition to the constitutional protections afforded to citizens' privacy, Russian law provides for statutory protection precluding the transfer of consumer data to a third party without consumer consent. *Id.* ¶¶ 30-45. Rackspace would be considered a processor of Russian citizens' personal data and must comply with Russia's Law on Personal Data, under which Rackspace cannot transfer Russian citizens' email data without consent. *Id.* ¶¶ 32-42. It would be unfair to Rackspace, a non-party, to require it to produce documents that implicate privacy laws with which it must comply as a processor of Russian citizens' personal data and company that maintains records of correspondence.

Finally, the email logs contain privileged information; *e.g.*, the identity of undisclosed consulting experts engaged for this litigation.  The production of unredacted email logs would disclose these privileged emails to Plaintiffs.  *See* Fed. R. Civ. P. 45(d)(3)(A)(iii) (court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter").

### III. MR. OSTLING PRODUCED REDACTED EMAIL LOGS TO PLAINTIFFS, AND IF NECESSARY, CAN PRODUCE UNREDACTED LOGS TO THIS COURT FOR IN CAMERA REVIEW.

The redacted logs that Mr. Ostling produced to Plaintiffs are attached as Exhibit D to the Declaration of Kimberly I. Culp.  Should this Court request an examination of the unredacted logs, Mr. Ostling can produce them to the Court for *in camera* inspection.  Mr. Ostling would also request notice and an opportunity to be heard prior to any disclosure of the unredacted logs by this Court to Plaintiffs.

### CONCLUSION

For all the foregoing reasons, Mr. Ostling asks this Court grant his motion and quash the subpoena as well as for fees expended in connection with having to bring this motion.  If this Court declines to fully or even partially quash the subpoena, Mr. Ostling asks that this Court modify it to allow Mr. Ostling to review and log any privileged communications prior to any production to Plaintiffs.

Dated: April 13, 2017                                         **VENABLE LLP**

By:   /s/ Thomas E. Wallerstein
Thomas E. Wallerstein (phv08752)
505 Montgomery Street, Suite 1400
San Francisco, CA 94111
Tel: 415-653-3750
Fax: 415-653-3755
TWallerstein@Venable.com

11

Glenn M. Cunningham (ct09995)
Ross H. Garber (ct17689)
Susan S. Murphy (ct25321)
SHIPMAN & GOODWIN LLP
One Constitution Plaza
Hartford, CT 06103
Tel: 860-251-5000
Fax: 860-251-5218
gcunningham@goodwin.com
rgarber@goodwin.com
smurphy2@goodwin.com